UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:08-cr-0141 OWW |
| | ) | |
|         Plaintiff, | ) | FINDINGS OF FACT, |
| | ) | CONCLUSIONS OF LAW AND |
|   v. | ) | ORDER GRANTING GOVERNMENT'S |
| | ) | MOTION TO REVOKE MAGISTRATE |
| BRETT MICHAEL PETERSEN, | ) | JUDGE'S PRETRIAL RELEASE |
| | ) | ORDER |
|         Defendant. | ) | |
| | ) | |
| _____ | ) | |

    This matter is before the Court on a motion brought by the United States of American to revoke the Magistrate Judge's order releasing the defendant on his own recognizance and to impose pretrial detention.

## PROCEDURAL HISTORY

    The defendant was charged by a criminal complaint filed on May 7, 2008, with impersonating a DEA agent, in violation of 18 U.S.C. § 912, and committing extortion or attempting to commit an act of extortion by representing himself to be an officer of the United States, in violation of 18 U.S.C. § 872.

    Later that day, the defendant made his initial appearance before the U.S. Magistrate Judge.  The defendant was represented

1

by Victor Chavez, Assistant Federal Defender, who appeared specially on behalf of the defendant until the case could be assigned within the Federal Defender's Office.  At that time, the Pretrial Services Officer, based on a purported understanding that the law does not authorize detention for dangerousness, for a non-presumption offense, recommended the Defendant's release on his own recognizance, notwithstanding the fact that his parents would not agree to post bond.  The government moved for pretrial detention under the Bail Reform Act of 1984, 18 U.S.C. §§ 3142(e),(f), and (g) (2006), which, upon motion of the government in a case that involves "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness," requires a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community.  18 U.S.C. §§ 3142(f)(2)(B) and (g).  Over the government's objection, the Magistrate Judge ordered the defendant released on his own recognizance to the third party custody of his mother, Glenda Becker.

The government sought and obtained an immediate stay of the Magistrate Judge's order and filed a motion to revoke the release moving the Court for a hearing pursuant to 18 U.S.C. § 3148.[1]

---

[1] The government also asserts that, in addition to the defendant's impersonation of a DEA agent for the purpose of identity theft, extortion, and fraud, the defendant's conduct involves threatening behavior, which the government intended to charge, pursuant to 18 U.S.C. § 875(c), in an indictment for presentment on May 15 to the grand jury.  A section 875 violation

1   However, the appropriate authority for review of the Magistrate

2   Judge's OR release order is 18 U.S.C. § 3145(a)(1).

3       On Friday, May 9, the defendant's assigned Assistant Federal

4   Defender, Ann Voris, filed an objection to the stay and moved for

5   his immediate release.  The government opposed the defendant's

6   request for immediate release in a written pleading filed May 9,

7   2007, citing legal authority in support of staying the pretrial

8   release order.  The Court denied the request for immediate

9   release without prejudice, based on the legality of the stay, as

10  well as the unavailability of the government to present an

11  evidentiary hearing that day and set an evidentiary hearing for

12  the next business day, May 12, 2008.  Weekend days are not

13  counted under § 3142(f)(2)(B).

14

15                    **STANDARD OF REVIEW**

16      The Defendant's suggestion that the Court lacks jurisdiction

17  to review a Magistrate Judge's release order is easily disposed

18  of by 18 U.S.C. § 3145(a), which provides in material part:

19          (a) . . . "If a person is ordered released by

20  _____

21  (transmitting threatening communications) constitutes "a crime of
    violence" under the Bail Reform Act to which a statutory

22  rebuttable presumption of flight and danger arises.  18 U.S.C.

23  §§ 3142(e), (f)(1)(A); *see, e.g., Henry v. Board of Immigration
    and Customs Enforcement*, 493 F.3d 303, 309, n.7 (3d Cir. 2007)

24  (for purposes of the Bail Reform Act provisions, the term "crime

25  of violence" means: (A) an offense that has an element of the
    offense, the use, attempted use, or threatened use of physical

26  force against the person or property of another; (B) any other
    offense that is a felony and that, by its nature, involves a

27  substantial risk that physical force against the person or
    property of another may be used in the course of committing the

28  offense....).

                            3

1

> a magistrate judge, . . .
>           (1)  The attorney for the government may
> file, with the court having jurisdiction over
> the offense, [the district court] a motion
> for revocation of the order or amendment of
> the conditions of release; and
>
>           . . .
>
> the motion shall be determined promptly.

In addressing this specific question, the Ninth Circuit in *United States v. Gebro*, 948 F.2d 1118, 1120, found that §§ 3145(a) and (b) underscore the importance of the *district judge* having original jurisdiction of the offense.   The Ninth Circuit stated:

> "We do not believe that this substantial
> responsibility, placed in the hands of an
> *Article III Judge* can be diminished by the
> earlier action of a *magistrate*.  Investing
> decision-making authority in *magistrates*
> under the federal *Magistrate's Act*, 28 U.S.C.
> § 636, Congress was sensitive to Article III
> values.  It emphasized that 'the Magistrate
> Act subsidiary to and only in aid of the
> district court,' and that 'the entire process
> takes place under the *district court's* total
> control and jurisdiction."  *United States v.*
> *Raddatz*, 447 U.S. 667, 681 (1980).

*Gebro* specifically held that the district court had jurisdiction to reopen the bail issue on its own motion.  *Id.* at p. 1120.  The district court obviously has the same authority on the motion of the government to review a pretrial detention decision, as it is specifically so provided by § 3145(a)(1).  Only the district court in the district where the prosecution is pending has the authority to review the magistrate judge's order.  *United States v. Evans*, 62 F.3d 1233, 1239 (9th Cir. 1995).  There is no question the district courts retain authority to review any release decisions by magistrate judges.  *United States v. Tooz*,

4

1  236 F.R.D. 442, 445 (D. Ariz. 2006).

2      The district court may hold an evidentiary hearing, under
3  the applicable *de novo* without deference review standard
4  governing the Magistrate Judge's release order.  The Magistrate
5  Judge's order is entitled to no deference, nor is the district
6  court required to adopt any factual findings made by the
7  Magistrate Judge.  *United States v. Koenig*, 912 F.2d 1190, 1193
8  (1990); *see also, U.S. v. McDavid*, 2006 WL 734877 (E.D. Cal
9  2006), Hollows, M.J. ("the district court's review of a
10 magistrate [judge's] detention order is to be conducted *de novo*
11 without deference to the magistrate [judge's] factual findings").
12 Such a hearing was held May 12, 2008.  At the nearly four hour
13 hearing on May 12, 2008, the government presented the testimony
14 of seven witnesses and moved into evidence Government Exhibits 1
15 through 25, consisting of a summary of exhibits and photographs
16 of exhibits seized from the defendant's residence on May 6,
17 pursuant to a federal search warrant for evidence relating to
18 defendant's charged crimes of impersonating a federal agent and
19 extortion, in violation of 18 U.S.C. §§ 872 and 912.

21                    **FINDINGS OF FACT**

22      The government's proof established by clear and convincing
23 evidence that the defendant falsely represented himself on
24 numerous occasions in the last six months, to several victims,
25 including two minors, Monica P., age 16, and her brother, age 13,
26 that he is a DEA agent.  Two other victims, Nicole M. and Nicole
27 T., testified that the defendant carried a firearm, a starter
28 pistol which looked identical to a firearm that these witnesses

5

1  believed was a firearm, which was seized from the defendant's

2  bedroom pursuant to a duly issued search warrant.  *See, e.g.,*

3  Government Exhibit 6 (photo of pistol).  The victims also

4  testified that the defendant told them that he had a government

5  issued vehicle, discussed his "case load," and defendant told

6  them he possessed methamphetamine seized pursuant to his "cases,"

7  which he showed to the victims.  Two victims also testified that

8  the defendant offered to take them on a ride-along and gave them

9  a purportedly official DEA ride-along form to complete.

10      Monica P. testified the defendant attempted to take her

11  thirteen year old brother on a ride-along.[2]  Victims who

12  completed the ride-along form provided defendant, at his request,

13  with their social security number, address, dates of birth, and

14  other personal identifying information.  The defendant used this

15  information to apply for and received unauthorized credit and

16  debit cards, email accounts, cell phones, access to a bank

17  account, and other things of value.

18      As set forth in Government Exhibit 1, numerous

19  correspondences from credit card companies sent to the

20  defendant's address in the names of victims, were seized from the

21  defendant's bedroom, along with advertisements for firearms,

22  starter pistols, assault weapons; badges; purported DEA case

23  logs, consisting of reports, including a so-called sex crimes

24  report containing graphic details, and a shirt with "Police," and

25

26      [2] Monica P. testified she did not want to enter the
27  courtroom or testify in the courtroom and wanted nothing to do
   with defendant.  She stated she was not in fear of the defendant
28  and did not view him as a threat.

"Narcotics Task Force" identifiers printed in large letters on the front and back, having the appearance of law enforcement raid gear.

One of the victims, whose testimony was highly credible, testified that the defendant was able to access her bank account and steal money, approximately $700.00.  When confronted by that victim, the defendant concocted an elaborate story, claiming that another corrupt DEA employee had stolen the victim's money and promised that DEA could reimburse the victim.

In addition, the defendant made numerous threatening communications, orally and electronically on cell phones in the form of text messages.  These communications were exhibited and read on victims' cell phones in open court.  While impersonating a DEA agent, the defendant sent the following text message to a friend of one of the testifying victims:

> I put it on my badge the shit ur in will all
> hit u at once with nothing u can do.

In another text message, the defendant wrote:

> If u see an all black crown victoria its 2
> late don't bother trying.

After receiving these text messages, this victim reported to the Selma Police Department that the victim was afraid for the victim's safety and the safety of others.  The victim and her mother expressed similar fears of the defendant at the hearing. The victim was specifically in fear of the defendant and was fearful he would know that she had contacted the Selma Police, because defendant possessed and used a police scanner.

The defendant also made threatening communications to another victim who also reported the matter to an officer of the

7

1  Selma Police Department.  The victim testified she loaned the
2  defendant money when the defendant was homeless after he had been
3  kicked out of his parents' house for using drugs.  When the
4  victim attempted to get repayment from the defendant, the
5  defendant did not repay the victim.  After the victim contacted
6  the defendant's father about the debt, the defendant's father
7  paid the victim for defendant's debt.  The defendant then made
8  another threatening communication to this victim:

9          "You better give the money back or I'll kill
           you."
10
   Later, the defendant sent a text message to the victim stating:
11
12          "Petersen is mad, there might be someone
            waiting for you at the house."

13      Witnesses also testified that the defendant, an admitted
14  methamphetamine user, smoked something from a glass pipe, which
15  he described as "vitamins" and "medicine" for a medical
16  condition.  When one of the victims described the pipe to her
17  mother, that victim learned that the pipe was in fact used to
18  smoke crystal methamphetamine.

19      The government further proffered in its motion papers and
20  oral submissions that, upon advice and waiver of his *Miranda*
21  rights, at the time he was arrested, the defendant admitted that
22  he continues to be a methamphetamine user; admitted to the
23  impersonation and extortion scheme; and stated that he stole his
24  victims' identities in order to defraud credit companies and
25  other entities as a means of paying off his drug debts.  These
26  activities were continuing up to the time of his current
27  incarceration and while he was residing at his parents' home.
28      Having been afforded the opportunity, the defendant did not

8

present any evidence at the *de novo* hearing on September 12, 2008.  The defendant argued that the stay was unlawful and further argued that the district court has no legal authority to order the defendant detained on the basis that he is a danger to persons and the community.

Two victims and one victim's mother testified they are fearful of the defendant and had real concern about his prior threats.  Kingsburg and Selma are small communities surrounded by agricultural lands.  Defendant's conduct was intended to and has been intimidating toward these victims.

At the conclusion of the hearing, the Court made oral findings as required by § 3142(f)(2)(B) and (g) and now makes the written findings called for by § 3142(g)(i).  For the reasons set forth in the evidentiary hearing record and the supplemental findings of fact made in writing above and below, it has been established by more than clear and convincing evidence, based on uncontested testimony of the victims; and the opinions of three local police officers familiar with defendant who have investigated his activities, that defendant is a present danger to the public, persons in the community, and the community, coupled with defendant's unobjected-to admissions of the crimes described above, after he was first *Mirandized*.  There are no conditions or combination of conditions that will assure the safety of persons and the community.

## CONCLUSIONS OF LAW

The U.S. Magistrate Judge was authorized to stay her OR release order upon application of the government's attorney

pursuant to 18 U.S.C. § 3142(f)(2)(B), which provides that a defendant may be detained pending completion of the detention hearing.  Subsection 3145(a) mandates a prompt review of the motion to revoke the Magistrate Judge's release order, thereby providing a reasonable safeguard against unduly extended detention during review.  The *de novo* bail appeal hearing was conducted promptly, five days after, including the intervening weekend, the defendant was ordered released.[3]

Section 3142(f) incorporates the important Congressional aim of assuring meaningful review of release orders, inasmuch as subsection 3142(f) permits detention "pending completion of the [detention] hearing," which reasonably includes a limited period for prompt review of the magistrate's release order under subsection 3145(a).  *Id.*

The Bail Reform Act mandates the release of a person pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e).  No rebuttable presumption applies in this case as there is no maximum term of imprisonment of ten years or more prescribed for the offenses.  "[T]he reference to safety of any other person [in 3142] is intended to cover the situation in which the safety of a particular identifiable individual . . . is of concern."  Here, two specific individuals, Nicole M. and

---

[3] In addition to the government's unavailability on Friday, May 9, the Court was presiding over a jury trial in the matter of *United States v. Luke Scarmazzo, et al.*, 1:06-cr-342 OWW, throughout the week of May 5.

Nicole P. are identifiable individuals of concern.  *See United States v. Hir*, 517 F.3d 1081, 1087, fn.3 (9th Cir. 2008).

The meaning of the term "community" is specifically addressed in the *Hir* case at p. 1087, and extends beyond the district in which the crimes have occurred, in this case, the Eastern District of California.  Community means any community such as the example given in *Hir*: "It would likewise be absurd to hold that a court in Florida must ignore the danger that an individual accused of defrauding susceptible persons in that state may pose to residents of Oregon."  *Id.* at p. 1088.  The district judge may determine the threat a defendant poses to any community, whether in the United States or abroad.  Here, the relevant community is the Eastern District of California and specifically, the cities of Selma and Kingsburg, where defendant has defrauded local residents and businesses in other states. Defendant's actions have interstate effect in perpetrating identity theft and credit card fraud, which have crossed state lines.

It is well recognized that a pretrial detention order must be careful to ensure that the "order is consistent with the defendant's constitutional and statutory rights."  *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  "[T]he Fifth and Eighth Amendments prohibitions of deprivations of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected."  *United States v. Motanedi*, 767 F.2d 1043, 1045 (9th Cir. 1985).

As observed by Judge Reinhardt in the *Hir* case, "The current

11

statute, the Bail Reform Act of 1984 was enacted, in large part, to address growing concern that dangerous individuals were committing crimes while released on bail." *Hir* at p. 1089. "Congress explained that the 'broad base of support for giving judges the authority to weigh risks to community safety and pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release." *Hir*, *id.* at p. 1089, *quoting*, 1984 U.S.C.C.A.N. 3182, 3889, S.Rep. Nos. 98-225, at 5 (1983).

Under § 3142(e) the judicial officer shall issue a detention order pending trial if no condition or combination of conditions will reasonably assure (a) the appearance of the person as required and (b) the safety of any other person and the community.   The government bears the burden of showing a danger to the community by clear and convincing evidence. *United States v. Gebro*, *supra*, 948 F.2d at 1121; citing *Mottamedi*, 767 F.2d at 1406-07.

Section 3142(g) specifies the factors the court must consider to determine whether there are conditions of release that will reasonably assure the Defendant's appearance and the community's safety: (1) the nature and seriousness of the offense(s) charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the defendant's release. *Gebro*,

1  948 F.2d at 1121.

2      As the Ninth Circuit specifically recognizes, conditions of

3  release depend largely on the Defendant's good faith – or lack of

4  it.  If conditions can too easily be circumvented or manipulated,

5  they are not effective.  *See, Hir* at p. 1093, *quoting, United*

6  *States v. Tortora*, 922 F.2d 880, 887, fn.11 (1st Cir. 1990).

7  Where conditions of release depend upon good faith compliance and

8  trust, where, as here, a defendant is an admitted drug user, a

9  thief, a liar, a false-impersonator, and has engaged in extortion

10 and threats pretending to be a DEA agent, there is an

11 unacceptably high risk that the defendant will not comply in good

12 faith nor can he be trusted to comply with proposed conditions,

13 or any other combination of release conditions imposed upon him.

14 *See Hir* at 1093.

15

16 <u>Application of the § 3142(g) Factors</u>

17      An evidentiary hearing has been held under 18 U.S.C.

18 § 3142(f)(2)(B).  The first 3142(g) factor is the nature and

19 seriousness of the offenses charged.  Here, the Defendant is

20 charged with impersonating an officer or employee of the United

21 States; to wit, a Drug Enforcement Administration agent and

22 extortion/attempted extortion by representing himself to be an

23 officer or employee of the United States.  These offenses entail

24 the Defendant's impersonation of a DEA agent, possession of a

25 starter pistol which has an almost identical appearance to a .9

26 mm semiautomatic firearm; threatening behavior toward individual

27 females ages 18 and 20 that the Defendant was attempting to

28 influence; threats to other persons that the Defendant would

13

1  "kill" a friend of one of the victims in this case; that he would
2  kill a young female victim if she did not repay his father;
3  victims' testimony under oath, that the Defendant has committed
4  identity theft, opened false credit cards; stolen at least
5  $700.00 from one of the testifying victims, age 20; impersonated
6  a Drug Enforcement Administration agent; and introduced minors,
7  ages 16 and 13, to a methamphetamine pipe and smoked the pipe in
8  front of the minors and sought to induce a 13 year old boy to go
9  on a "ride along" with him as part of the Defendant's false
10 personation of himself as a DEA agent.  Further evidence shows
11 that the Defendant is an habitual user of methamphetamine, has
12 unsuccessfully participated in a residential drug rehabilitation
13 program and out-patient after-care, is not controllable by his
14 mother, who is the proposed custodian of the Defendant.

15     Defendant's threatening and extortionate behavior, false
16 personation of a DEA agent; direct lying; commission of white
17 collar fraud resulting in the theft of the credit cards, opening
18 and obtaining credit cards and cell phones under a false name;
19 stealing money from a victim to pay drug debts and unreliability
20 of the Defendant based on his lack of employment, all indicate an
21 unstable and threatening individual engage in serious, dangerous,
22 and threatening conduct, who became angry in the courtroom during
23 the detention hearing, and of whom two of the witnesses
24 specifically identified they are afraid.

25     Based on the nature of these offenses and Defendant's
26 habitual lying and lack of trustworthiness, the seriousness of
27 the offenses factor weights strongly in favor of detention.
28     The second factor is the weight of the evidence against the

14

Defendant.  Here, the Defendant has presented significant testimony, including that of the victim witnesses, persons who have been threatened directly, verbally, and by electronic text messages presented in open court.  Direct evidence of continuing drug use; angry and unpredictable behavior by Defendant; extortion and theft to obtain money to pay drug debts; admitted and uncontradicted evidence of the theft of the credit card of one of the victims, accessing her bank account to steal money; and fabrication of a categorically false explanation to the victim that the victim's credit card had been stolen by a DEA employee who worked for the Defendant.  Other fraudulently obtained credit cards and the starter pistol, having the appearance of a firearm, were all seized from the Defendant's parents' residence where he resided.  Defendant has admitted false personation, identity theft, credit card fraud, and his current drug addiction.  The weight of the evidence on the second factor is overwhelming against pretrial release.

The third factor is the Defendant's history, character, mental condition, family and community ties, past conduct, history related to drug abuse, and criminal history.  Although the Defendant has no criminal history and his long-standing local family and community ties, he is an habitual methamphetamine user since the age of 16 and his parents cannot control him.  At great expense to his parents, he recently as represented by the Pretrial Services Officer, "successfully completed a residential drug treatment program and after-care program," but has now reverted to the use of methamphetamine as Defendant himself admits.  He is committing crimes to pay drug debts.  Evidence of

1   the unsuccessful treatment is provided by the Defendant's mother
2   and others who have told the Pretrial Services Officer and
3   testimony was presented in the court, hearing that the Defendant
4   is again using methamphetamine.  He admits his recent drug use.

5        As to his character, Defendant is an admitted and proven
6   liar, completely untrustworthy, and has engaged in bizarre,
7   threatening, and extortionate behavior in which he has sought to
8   influence minors as young as age 13 and to expose them to
9   methamphetamine.

10       He is not employed, was using drugs at the time of his
11  arrest, and has exhibited anger in threatening to kill the male
12  friend of one of the female witnesses and demonstrated anger in
13  the courtroom during the hearing, which his attorney attempted to
14  control.  The Third factors overwhelmingly favor detention.

15       The Fourth factor is the nature and seriousness of the
16  danger to any person or to the community posed by the Defendant's
17  release.  Here, the Defendant presents a significant danger to
18  identified persons who he has threatened directly and
19  communicated threats to others.  He has preyed on two minors,
20  Monica P. and her 13 year old brother.  He has intimidated
21  victims by misrepresenting that he is a DEA agent and attempted
22  to take the 13 year old on a "ride along."  He has used what
23  appeared to be drugs in the presence of the 13 year old and
24  Nicole M.  He has threatened two of the witnesses, Nicole M. and
25  Nicole T.  He threatened to kill Nicole T's friend within the
26  past 12 months.  Nicole T. is presently in active fear of the
27  Defendant.  Three Selma Police Officers testified that the
28  Defendant is dangerous and is a threat to persons and the

16

community.

The Fourth factor overwhelmingly favors detention.

Because of the Defendant's unstable, unpredictable and untrustworthy behavior, there is no set of conditions that could be fashioned to protect persons or the community because all such conditions require the compliance of the Defendant, based on trust.  The Defendant has proved that he is dishonest.  He is categorically untrustworthy.

All the statutorily required factors clearly and convincingly weigh against release.  There are no conditions which will reasonably assure the safety of the community.  As far as appearance at trial, given the increasingly bizarre and dangerous behavior of the Defendant and his continued use of controlled substances, the Court has no confidence that he can be trusted to comply with court orders.  This is exacerbated by his exhibition of anger in open court during the detention hearing.

IT IS THE FURTHER FINDING OF THE COURT THAT all the clear and convincing evidence of dangerousness of the accused to persons and the community is so great, that the conditions of 18 U.S.C. §§ 3142(e) and (f)(2)(B) have been established by clear and convincing evidence the Defendant has obstructed and will obstruct justice by his lying, intimidating, and extortionate conduct.  He has threatened, intimidated, and will attempt to deter victim witnesses in this case.  For these reasons, pretrial detention does not violate this defendant's Fifth Amendment right to substantive due process.  *See, e.g., United States v. Salerno*, 481 U.S. 739 (1987); *United States v. Walker*, 808 F.2d 1309, 1311 (9th Cir. 1986); *see also, United States v. His*, 517 F.3d 1081,

1  1090-92 (9th Cir. 2008).

2       THE COURT FURTHER FINDS THAT the government has shown by

3  clear and convincing evidence that because the defendant is a

4  methamphetamine addict he cannot be trusted.  His continuing

5  impersonation of a DEA agent and fraudulent conduct establish by

6  clear and convincing evidence that he is unlikely to abide by any

7  condition of release and that no condition or combination of

8  conditions can assure the safety of identified persons and the

9  community.

10

11                              CONCLUSION

12       For all the reasons stated in the above Findings of Fact and

13 Conclusions of Law, the government's motion to revoke defendant

14 Brett Petersen's pretrial release is GRANTED and the defendant

15 shall remain detained in the custody of the United States Marshal

16 pending further order of the court or final disposition of this

17 case.

18

19 SO ORDERED.

20

   DATED:  May 16, 2008.
21

22

                          _____/s/ Oliver W. Wanger_____
23                               Oliver W. Wanger
                            United States District Judge
24

25

26

27

28

                                  18