1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   UNITED STATES OF AMERICA,      )      1:08-cr-0141 OWW
                                    )
10                  Plaintiff,      )      CORRECTED FINDINGS OF FACT,
                                    )      CONCLUSIONS OF LAW AND
11       v.                         )      ORDER GRANTING GOVERNMENT'S
                                    )      MOTION TO REVOKE MAGISTRATE
12  BRETT MICHAEL PETERSEN,         )      JUDGE'S PRETRIAL RELEASE
                                    )      ORDER
13                  Defendant.      )
                                    )
14  _____ )

15

16       This matter is before the Court on a motion brought by the

17  United States of American to revoke the Magistrate Judge's order

18  releasing the defendant on his own recognizance and to impose

19  pretrial detention.

20

21                     PROCEDURAL HISTORY

22       The defendant was charged by a criminal complaint filed on

23  May 7, 2008, with impersonating a DEA agent, in violation of 18

24  U.S.C. § 912, and committing extortion or attempting to commit an

25  act of extortion by representing himself to be an officer of the

26  United States, in violation of 18 U.S.C. § 872.

27       Later that day, the defendant made his initial appearance

28  before the U.S. Magistrate Judge.  The defendant was represented

                                1

1  by Victor Chavez, Assistant Federal Defender, who appeared

2  specially on behalf of the defendant until the case could be

3  assigned within the Federal Defender's Office.  At that time, the

4  Pretrial Services Officer, based on a purported understanding

5  that the law does not authorize detention for dangerousness, for

6  a non-presumption offense, recommended the Defendant's release on

7  his own recognizance, notwithstanding the fact that his parents

8  would not agree to post bond.  The government moved for pretrial

9  detention under the Bail Reform Act of 1984, 18 U.S.C.

10 §§ 3142(e),(f), and (g) (2006), which, upon motion of the

11 government in a case that involves "a serious risk that such

12 person will obstruct or attempt to obstruct justice, or threaten,

13 injure, or intimidate, a prospective witness," requires a hearing

14 to determine whether any condition or combination of conditions

15 will reasonably assure the appearance of the defendant and the

16 safety of any other person and the community.  18 U.S.C.

17 §§ 3142(f)(2)(B) and (g).  Over the government's objection, the

18 Magistrate Judge ordered the defendant released on his own

19 recognizance to the third party custody of his mother, Glenda

20 Becker.

21      The government sought and obtained an immediate stay of the

22 Magistrate Judge's order and filed a motion to revoke the release

23 moving the Court for a hearing pursuant to 18 U.S.C. § 3148.[1]

24 _____

25      [1] The government also asserts that, in addition to the

26 defendant's impersonation of a DEA agent for the purpose of
   identity theft, extortion, and fraud, the defendant's conduct

27 involves threatening behavior, which the government intended to
   charge, pursuant to 18 U.S.C. § 875(c), in an indictment for

28 presentment on May 15 to the grand jury.  A section 875 violation

1  However, the appropriate authority for review of the Magistrate

2  Judge's OR release order is 18 U.S.C. § 3145(a)(1).

3       On Friday, May 9, the defendant's assigned Assistant Federal

4  Defender, Ann Voris, filed an objection to the stay and moved for

5  his immediate release.  The government opposed the defendant's

6  request for immediate release in a written pleading filed May 9,

7  2007, citing legal authority in support of staying the pretrial

8  release order.  The Court denied the request for immediate

9  release without prejudice, based on the legality of the stay, as

10  well as the unavailability of the government to present an

11  evidentiary hearing that day and set an evidentiary hearing for

12  the next business day, May 12, 2008.  Weekend days are not

13  counted under § 3142(f)(2)(B).

14

15                      **STANDARD OF REVIEW**

16       The Defendant's suggestion that the Court lacks jurisdiction

17  to review a Magistrate Judge's release order is easily disposed

18  of by 18 U.S.C. § 3145(a), which provides in material part:

19            (a) . . . "If a person is ordered released by

20  _____

21  (transmitting threatening communications) constitutes "a crime of
   violence" under the Bail Reform Act to which a statutory

22  rebuttable presumption of flight and danger arises.  18 U.S.C.
   §§ 3142(e), (f)(1)(A); *see, e.g., Henry v. Board of Immigration*

23  *and Customs Enforcement*, 493 F.3d 303, 309, n.7 (3d Cir. 2007)

24  (for purposes of the Bail Reform Act provisions, the term "crime
   of violence" means: (A) an offense that has an element of the

25  offense, the use, attempted use, or threatened use of physical
   force against the person or property of another; (B) any other

26  offense that is a felony and that, by its nature, involves a

27  substantial risk that physical force against the person or
   property of another may be used in the course of committing the

28  offense....).

                              3

>           a magistrate judge, . . .
>                   (1)   The attorney for the government may
>           file, with the court having jurisdiction over
>           the offense, [the district court] a motion
>           for revocation of the order or amendment of
>           the conditions of release; and
>
>                   . . .
>
>           the motion shall be determined promptly.

In addressing this specific question, the Ninth Circuit in *United States v. Gebro*, 948 F.2d 1118, 1120, found that §§ 3145(a) and (b) underscore the importance of the *district judge* having original jurisdiction of the offense.   The Ninth Circuit stated:

>           "We do not believe that this substantial
>           responsibility, placed in the hands of an
>           *Article III Judge* can be diminished by the
>           earlier action of a *magistrate*.   Investing
>           decision-making authority in *magistrates*
>           under the federal *Magistrate's Act*, 28 U.S.C.
>           § 636, Congress was sensitive to Article III
>           values.   It emphasized that 'the Magistrate
>           Act subsidiary to and only in aid of the
>           district court,' and that 'the entire process
>           takes place under the *district court's* total
>           control and jurisdiction."   *United States v.
>           Raddatz*, 447 U.S. 667, 681 (1980).

*Gebro* specifically held that the district court had jurisdiction to reopen the bail issue on its own motion.   *Id.* at p. 1120.   The district court obviously has the same authority on the motion of the government to review a pretrial detention decision, as it is specifically so provided by § 3145(a)(1).   Only the district court in the district where the prosecution is pending has the authority to review the magistrate judge's order.   *United States v. Evans*, 62 F.3d 1233, 1239 (9th Cir. 1995).   There is no question the district courts retain authority to review any release decisions by magistrate judges.   *United States v. Tooz*,

236 F.R.D. 442, 445 (D. Ariz. 2006).

The district court may hold an evidentiary hearing, under the applicable *de novo* without deference review standard governing the Magistrate Judge's release order.  The Magistrate Judge's order is entitled to no deference, nor is the district court required to adopt any factual findings made by the Magistrate Judge.  *United States v. Koenig*, 912 F.2d 1190, 1193 (1990); *see also, U.S. v. McDavid*, 2006 WL 734877 (E.D. Cal 2006), Hollows, M.J. ("the district court's review of a magistrate [judge's] detention order is to be conducted *de novo* without deference to the magistrate [judge's] factual findings").  Such a hearing was held May 12, 2008.  At the nearly four hour hearing on May 12, 2008, the government presented the testimony of seven witnesses and moved into evidence Government Exhibits 1 through 25, consisting of a summary of exhibits and photographs of exhibits seized from the defendant's residence on May 6, pursuant to a federal search warrant for evidence relating to defendant's charged crimes of impersonating a federal agent and extortion, in violation of 18 U.S.C. §§ 872 and 912.


**FINDINGS OF FACT**

The government's proof established by clear and convincing evidence that the defendant falsely represented himself on numerous occasions in the last six months, to several victims, including two minors, Monica P., age 16, and her brother, age 13, that he is a DEA agent.  Two other victims, Nicole M. and Nicole T., testified that the defendant carried a firearm, a starter pistol which looked identical to a firearm that these witnesses

believed was a firearm, which was seized from the defendant's bedroom pursuant to a duly issued search warrant. *See, e.g.,* Government Exhibit 6 (photo of pistol).  The victims also testified that the defendant told them that he had a government issued vehicle, discussed his "case load," and defendant told them he possessed methamphetamine seized pursuant to his "cases," which he showed to the victims.  Two victims also testified that the defendant offered to take them on a ride-along and gave them a purportedly official DEA ride-along form to complete.

Monica P. testified the defendant attempted to take her thirteen year old brother on a ride-along.[2]  Victims who completed the ride-along form provided defendant, at his request, with their social security number, address, dates of birth, and other personal identifying information.  The defendant used this information to apply for and received unauthorized credit and debit cards, email accounts, cell phones, access to a bank account, and other things of value.

As set forth in Government Exhibit 1, numerous correspondences from credit card companies sent to the defendant's address in the names of victims, were seized from the defendant's bedroom, along with advertisements for firearms, starter pistols, assault weapons; badges; purported DEA case logs, consisting of reports, including a so-called sex crimes report containing graphic details, and a shirt with "Police," and

---

[2] Monica P. testified she did not want to enter the courtroom or testify in the courtroom and wanted nothing to do with defendant.  She stated she was not in fear of the defendant and did not view him as a threat.

"Narcotics Task Force" identifiers printed in large letters on the front and back, having the appearance of law enforcement raid gear.

One of the victims, whose testimony was highly credible, testified that the defendant was able to access her bank account and steal money, approximately $700.00.  When confronted by that victim, the defendant concocted an elaborate story, claiming that another corrupt DEA employee had stolen the victim's money and promised that DEA could reimburse the victim.

In addition, the defendant made numerous threatening communications, orally and electronically on cell phones in the form of text messages.  These communications were exhibited and read on victims' cell phones in open court.  While impersonating a DEA agent, the defendant sent the following text message to a friend of one of the testifying victims:

> I put it on my badge the shit ur in will all
> hit u at once with nothing u can do.

In another text message, the defendant wrote:

> If u see an all black crown victoria its 2
> late don't bother trying.

After receiving these text messages, this victim reported to the Selma Police Department that the victim was afraid for the victim's safety and the safety of others.  The victim and her mother expressed similar fears of the defendant at the hearing. The victim was specifically in fear of the defendant and was fearful he would know that she had contacted the Selma Police, because defendant possessed and used a police scanner.

The defendant also made threatening communications to another victim who also reported the matter to an officer of the

Selma Police Department.  The victim testified she loaned the defendant money when the defendant was homeless after he had been kicked out of his parents' house for using drugs.  When the victim attempted to get repayment from the defendant, the defendant did not repay the victim.  After the victim contacted the defendant's father about the debt, the defendant's father paid the victim for defendant's debt.  The defendant then made another threatening communication to this victim:

> "You better give the money back or I'll kill you."

Later, the defendant sent a text message to the victim stating:

> "Petersen is mad, there might be someone waiting for you at the house."

Witnesses also testified that the defendant, an admitted methamphetamine user, smoked something from a glass pipe, which he described as "vitamins" and "medicine" for a medical condition.  When one of the victims described the pipe to her mother, that victim learned that the pipe was in fact used to smoke crystal methamphetamine.

The government further proffered in its motion papers and oral submissions that, upon advice and waiver of his *Miranda* rights, at the time he was arrested, the defendant admitted that he continues to be a methamphetamine user; admitted to the impersonation and extortion scheme; and stated that he stole his victims' identities in order to defraud credit companies and other entities as a means of paying off his drug debts.  These activities were continuing up to the time of his current incarceration and while he was residing at his parents' home.

Having been afforded the opportunity, the defendant did not

1   present any evidence at the *de novo* hearing on September 12,
2   2008.  The defendant argued that the stay was unlawful and
3   further argued that the district court has no legal authority to
4   order the defendant detained on the basis that he is a danger to
5   persons and the community.

6        Two victims and one victim's mother testified they are
7   fearful of the defendant and had real concern about his prior
8   threats.  Kingsburg and Selma are small communities surrounded by
9   agricultural lands.  Defendant's conduct was intended to and has
10  been intimidating toward these victims.

11       At the conclusion of the hearing, the Court made oral
12  findings as required by § 3142(f)(2)(B) and (g) and now makes the
13  written findings called for by § 3142(g)(i).  For the reasons set
14  forth in the evidentiary hearing record and the supplemental
15  findings of fact made in writing above and below, it has been
16  established by more than clear and convincing evidence, based on
17  uncontested testimony of the victims; and the opinions of three
18  local police officers familiar with defendant who have
19  investigated his activities, that defendant is a present danger
20  to the public, persons in the community, and the community,
21  coupled with defendant's unobjected-to admissions of the crimes
22  described above, after he was first *Mirandized*.  There are no
23  conditions or combination of conditions that will assure the
24  safety of persons and the community.

25

26                        CONCLUSIONS OF LAW

27       The U.S. Magistrate Judge was authorized to stay her OR
28  release order upon application of the government's attorney

                              **9**

pursuant to 18 U.S.C. § 3142(f)(2)(B), which provides that a defendant may be detained pending completion of the detention hearing.  Subsection 3145(a) mandates a prompt review of the motion to revoke the Magistrate Judge's release order, thereby providing a reasonable safeguard against unduly extended detention during review.  The *de novo* bail appeal hearing was conducted promptly, five days after, including the intervening weekend, the defendant was ordered released.[3]

Section 3142(f) incorporates the important Congressional aim of assuring meaningful review of release orders, inasmuch as subsection 3142(f) permits detention "pending completion of the [detention] hearing," which reasonably includes a limited period for prompt review of the magistrate's release order under subsection 3145(a).  *Id.*

The Bail Reform Act mandates the release of a person pending trial unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community."  18 U.S.C. § 3142(e).  No rebuttable presumption applies in this case as there is no maximum term of imprisonment of ten years or more prescribed for the offenses.  "[T]he reference to safety of any other person [in 3142] is intended to cover the situation in which the safety of a particular identifiable individual . . . is of concern."  Here, two specific individuals, Nicole M. and

---

[3] In addition to the government's unavailability on Friday, May 9, the Court was presiding over a jury trial in the matter of *United States v. Luke Scarmazzo, et al.*, 1:06-cr-342 OWW, throughout the week of May 5.

1    Nicole P. are identifiable individuals of concern.  *See United*
2    *States v. Hir*, 517 F.3d 1081, 1087, fn.3 (9th Cir. 2008).

3         The meaning of the term "community" is specifically
4    addressed in the *Hir* case at p. 1087, and extends beyond the
5    district in which the crimes have occurred, in this case, the
6    Eastern District of California.  Community means any community
7    such as the example given in *Hir*: "It would likewise be absurd to
8    hold that a court in Florida must ignore the danger that an
9    individual accused of defrauding susceptible persons in that
10   state may pose to residents of Oregon."  *Id.* at p. 1088.  The
11   district judge may determine the threat a defendant poses to any
12   community, whether in the United States or abroad.  Here, the
13   relevant community is the Eastern District of California and
14   specifically, the cities of Selma and Kingsburg, where defendant
15   has defrauded local residents and businesses in other states.
16   Defendant's actions have interstate effect in perpetrating
17   identity theft and credit card fraud, which have crossed state
18   lines.

19        It is well recognized that a pretrial detention order must
20   be careful to ensure that the "order is consistent with the
21   defendant's constitutional and statutory rights."  *United States*
22   *v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  "[T]he Fifth and
23   Eighth Amendments prohibitions of deprivations of liberty without
24   due process and of excessive bail require careful review of
25   pretrial detention orders to ensure that the statutory mandate
26   has been respected."  *United States v. Motanedi*, 767 F.2d 1043,
27   1045 (9th Cir. 1985).

28        As observed by Judge Reinhardt in the *Hir* case, "The current

statute, the Bail Reform Act of 1984 was enacted, in large part, to address growing concern that dangerous individuals were committing crimes while released on bail." *Hir* at p. 1089. "Congress explained that the 'broad base of support for giving judges the authority to weigh risks to community safety and pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release." *Hir*, *id.* at p. 1089, *quoting*, 1984 U.S.C.C.A.N. 3182, 3889, S.Rep. Nos. 98-225, at 5 (1983).

Under § 3142(e) the judicial officer shall issue a detention order pending trial if no condition or combination of conditions will reasonably assure (a) the appearance of the person as required and (b) the safety of any other person and the community.   The government bears the burden of showing a danger to the community by clear and convincing evidence.   *United States v. Gebro*, *supra*, 948 F.2d at 1121; citing *Mottamedi*, 767 F.2d at 1406-07.

Section 3142(g) specifies the factors the court must consider to determine whether there are conditions of release that will reasonably assure the Defendant's appearance and the community's safety: (1) the nature and seriousness of the offense(s) charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the defendant's release.   *Gebro*,

1   948 F.2d at 1121.

2          As the Ninth Circuit specifically recognizes, conditions of
3   release depend largely on the Defendant's good faith - or lack of
4   it.   If conditions can too easily be circumvented or manipulated,
5   they are not effective.  *See, Hir* at p. 1093, *quoting, United*
6   *States v. Tortora*, 922 F.2d 880, 887, fn.11 (1st Cir. 1990).
7   Where conditions of release depend upon good faith compliance and
8   trust, where, as here, a defendant is an admitted drug user, a
9   thief, a liar, a false-impersonator, and has engaged in extortion
10  and threats pretending to be a DEA agent, there is an
11  unacceptably high risk that the defendant will not comply in good
12  faith nor can he be trusted to comply with proposed conditions,
13  or any other combination of release conditions imposed upon him.
14  *See Hir* at 1093.

15

16  Application of the § 3142(g) Factors

17         An evidentiary hearing has been held under 18 U.S.C.
18  § 3142(f)(2)(B).   The first 3142(g) factor is the nature and
19  seriousness of the offenses charged.   Here, the Defendant is
20  charged with impersonating an officer or employee of the United
21  States; to wit, a Drug Enforcement Administration agent and
22  extortion/attempted extortion by representing himself to be an
23  officer or employee of the United States.   These offenses entail
24  the Defendant's impersonation of a DEA agent, possession of a
25  starter pistol which has an almost identical appearance to a .9
26  mm semiautomatic firearm; threatening behavior toward individual
27  females ages 18 and 20 that the Defendant was attempting to
28  influence; threats to other persons that the Defendant would

                                   13

"kill" a friend of one of the victims in this case; that he would kill a young female victim if she did not repay his father; victims' testimony under oath, that the Defendant has committed identity theft, opened false credit cards; stolen at least $700.00 from one of the testifying victims, age 20; impersonated a Drug Enforcement Administration agent; and introduced minors, ages 16 and 13, to a methamphetamine pipe and smoked the pipe in front of the minors and sought to induce a 13 year old boy to go on a "ride along" with him as part of the Defendant's false personation of himself as a DEA agent.  Further evidence shows that the Defendant is an habitual user of methamphetamine, has unsuccessfully participated in a residential drug rehabilitation program and out-patient after-care, is not controllable by his mother, who is the proposed custodian of the Defendant.

Defendant's threatening and extortionate behavior, false personation of a DEA agent; direct lying; commission of white collar fraud resulting in the theft of the credit cards, opening and obtaining credit cards and cell phones under a false name; stealing money from a victim to pay drug debts and unreliability of the Defendant based on his lack of employment, all indicate an unstable and threatening individual engaged in serious, dangerous, and threatening conduct, who became angry in the courtroom during the detention hearing, and of whom two of the witnesses specifically testified they are afraid.

Based on the nature of these offenses and Defendant's habitual lying and lack of trustworthiness, the seriousness of the offenses factor weights strongly in favor of detention.

The second factor is the weight of the evidence against the

**14**

1  Defendant.   Here, the Government has presented significant
2  testimony, including that of the victim witnesses, persons who
3  have been directly threatened and intimidated, verbally, and by
4  electronic text messages presented in open court.   Direct
5  evidence of continuing drug use; angry and unpredictable behavior
6  by Defendant;  extortion and theft to obtain money to pay drug
7  debts; admitted and uncontradicted evidence of the theft of the
8  credit card of one of the victims, accessing her bank account to
9  steal money; and fabrication of a categorically false explanation
10 to the victim that the victim's credit card had been stolen by a
11 DEA employee who worked for the Defendant.   Other fraudulently
12 obtained credit cards and the starter pistol, having the
13 appearance of a firearm, were all seized from the Defendant's
14 parents' residence where he resided.   Defendant has admitted
15 false personation, identity theft, credit card fraud, and his
16 current drug addiction.   The weight of the evidence on the second
17 factor is overwhelming against pretrial release.

18      The third factor is the Defendant's history, character,
19 mental condition, family and community ties, past conduct,
20 history related to drug abuse, and criminal history.   Although
21 the Defendant has no criminal history and has long-standing local
22 family and community ties, he has been an habitual
23 methamphetamine user since the age of 16 and his parents cannot
24 control him.   At great expense to his parents, he recently as
25 represented by the Pretrial Services Officer, "successfully
26 completed a residential drug treatment program and after-care
27 program," but has now reverted to the use of methamphetamine as
28 Defendant himself admits.   He is committing crimes to pay drug

15

1  debts.   Evidence of the unsuccessful treatment is provided by the
2  Defendant's mother and others who have told the Pretrial Services
3  Officer and testimony was presented in the court hearing that the
4  Defendant is again using methamphetamine.   He admits his recent
5  drug use.

6       As to his character, Defendant is an admitted and proven
7  liar, completely untrustworthy, and has engaged in bizarre,
8  threatening, intimidating, and extortionate behavior in which he
9  has sought to influence minors as young as age 13 and to expose
10 them to methamphetamine.

11      He is not employed, was using drugs at the time of his
12 arrest, and has exhibited anger in threatening to kill the male
13 friend of one of the female witnesses and demonstrated anger in
14 the courtroom during the hearing, which his attorney attempted to
15 control.   The Third factors overwhelmingly favor detention.

16      The Fourth factor is the nature and seriousness of the
17 danger to any person or to the community posed by the Defendant's
18 release.   Here, the Defendant presents a significant danger to
19 identified persons who he has threatened directly and has
20 communicated threats to others.   He has preyed on two minors,
21 Monica P. and her 13 year old brother.   He has intimidated
22 victims by misrepresenting that he is a DEA agent and attempted
23 to take the 13 year old on a "ride along."   He has used a crack
24 pipe and what appeared to be drugs in the presence of the 13 year
25 old and Nicole M.   He has threatened two of the witnesses, Nicole
26 M. and Nicole T.   He threatened to kill Nicole T's friend within
27 the past 12 months.   Nicole T. is presently in active fear of the
28 Defendant.   Three Selma Police Officers testified that the

1   Defendant is dangerous and is a threat to persons and the
2   community.
3        The Fourth factor overwhelmingly favors detention.
4        Because of the Defendant's unstable, unpredictable and
5   untrustworthy behavior, there is no set of conditions that could
6   be fashioned to protect persons or the community because all such
7   conditions require the compliance of the Defendant, based on
8   trust.  The Defendant has proved that he is dishonest.  He is
9   categorically untrustworthy.  The condition that he reside with
10  his mother is wholly unjustified.  Defendant has been engaging in
11  criminal behavior while residing at his mother's residence.
12       All the statutorily required factors clearly and
13  convincingly weigh against release.  There are no conditions
14  which will reasonably assure the safety of persons and the
15  community.  As far as appearance at trial, given the increasingly
16  bizarre and dangerous behavior of the Defendant and his continued
17  use of controlled substances, the Court has no confidence that he
18  can be trusted to comply with court orders or to make court
19  appearances.  This is exacerbated by his exhibition of anger in
20  open court during the detention hearing.
21       IT IS THE FURTHER FINDING OF THE COURT THAT all the clear
22  and convincing evidence of dangerousness of the accused to
23  persons and the community is so great, that the conditions of 18
24  U.S.C. §§ 3142(e) and (f)(2)(B) have been established by clear
25  and convincing evidence the Defendant has obstructed and will
26  obstruct justice by his lying, intimidating, and extortionate
27  conduct.  He has threatened, intimidated, and will attempt to
28  deter victim witnesses in this case.  For these reasons, pretrial

1  detention does not violate this defendant's Fifth Amendment right

2  to substantive due process.  *See, e.g., United States v. Salerno*,

3  481 U.S. 739 (1987); *United States v. Walker*, 808 F.2d 1309, 1311

4  (9th Cir. 1986); *see also, United States v. His*, 517 F.3d 1081,

5  1090-92 (9th Cir. 2008).

6       THE COURT FURTHER FINDS THAT the government has shown by

7  clear and convincing evidence that because the defendant is a

8  methamphetamine addict he cannot be trusted.  His continuing

9  impersonation of a DEA agent and fraudulent conduct establish by

10  clear and convincing evidence that he is unlikely to abide by any

11  condition of release and that no condition or combination of

12  conditions can assure the safety of identified persons and the

13  community.

14

15                              CONCLUSION

16       For all the reasons stated in the above Findings of Fact and

17  Conclusions of Law, the government's motion to revoke defendant

18  Brett Petersen's pretrial release is GRANTED and the defendant

19  shall remain detained in the custody of the United States Marshal

20  pending further order of the court or final disposition of this

21  case.

22

23  SO ORDERED.

24

   DATED:  May 19, 2008.

25

26

                              _____/s/ Oliver W. Wanger_____

27                              Oliver W. Wanger
                              United States District Judge

28

                                  18