1
2
3
4
5
6            UNITED STATES DISTRICT COURT

7            EASTERN DISTRICT OF CALIFORNIA

8

9  UNITED STATES OF AMERICA,     )    1:08-cr-0141 OWW
                                 )
10              Plaintiff,       )    SECOND CORRECTED FINDINGS
                                 )    OF FACT, CONCLUSIONS OF LAW
11     v.                        )    AND ORDER GRANTING
                                 )    GOVERNMENT'S MOTION TO
12 BRETT MICHAEL PETERSEN,       )    REVOKE MAGISTRATE JUDGE'S
                                 )    PRETRIAL RELEASE ORDER
13              Defendant.       )
                                 )
14 _____ )

15

16       This matter is before the Court on a motion brought by the

17 United States of American to revoke the Magistrate Judge's order

18 releasing the defendant on his own recognizance and to impose

19 pretrial detention.

20

21                      PROCEDURAL HISTORY

22       The defendant was charged by a criminal complaint filed on

23 May 7, 2008, with impersonating a DEA agent, in violation of 18

24 U.S.C. § 912, and committing extortion or attempting to commit an

25 act of extortion by representing himself to be an officer of the

26 United States, in violation of 18 U.S.C. § 872.

27       Later that day, the defendant made his initial appearance

28 before the U.S. Magistrate Judge.  The defendant was represented

                              1

by Victor Chavez, Assistant Federal Defender, who appeared specially on behalf of the defendant until the case could be assigned within the Federal Defender's Office.  At that time, the Pretrial Services Officer, based on a purported understanding that the law does not authorize detention for dangerousness, for a non-presumption offense, recommended the Defendant's release on his own recognizance, notwithstanding the fact that his parents would not agree to post bond.  The government moved for pretrial detention under the Bail Reform Act of 1984, 18 U.S.C. §§ 3142(e),(f), and (g) (2006), which, upon motion of the government in a case that involves "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness," requires a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community.  18 U.S.C. §§ 3142(f)(2)(B) and (g).  Over the government's objection, the Magistrate Judge ordered the defendant released on his own recognizance to the third party custody of his mother, Glenda Becker.

The government sought and obtained an immediate stay of the Magistrate Judge's order and filed a motion to revoke the release moving the Court for a hearing pursuant to 18 U.S.C. § 3148.[1]

_____

[1] The government also asserts that, in addition to the defendant's impersonation of a DEA agent for the purpose of identity theft, extortion, and fraud, the defendant's conduct involves threatening behavior, which the government intended to charge, pursuant to 18 U.S.C. § 875(c), in an indictment for presentment on May 15 to the grand jury.  A section 875 violation

1  However, the appropriate authority for review of the Magistrate

2  Judge's OR release order is 18 U.S.C. § 3145(a)(1).

3        On Friday, May 9, the defendant's assigned Assistant Federal

4  Defender, Ann Voris, filed an objection to the stay and moved for

5  his immediate release.  The government opposed the defendant's

6  request for immediate release in a written pleading filed May 9,

7  2007, citing legal authority in support of staying the pretrial

8  release order.  The Court denied the request for immediate

9  release without prejudice, based on the legality of the stay, as

10 well as the unavailability of the government to present an

11 evidentiary hearing that day and set an evidentiary hearing for

12 the next business day, May 12, 2008.  Weekend days are not

13 counted under § 3142(f)(2)(B).

14

15                        **STANDARD OF REVIEW**

16        The Defendant's suggestion that the Court lacks jurisdiction

17 to review, amend, or revoke  a Magistrate Judge's release order

18 is easily disposed of by 18 U.S.C. § 3145(a), which provides in

19 material part:

20 _____

21 (transmitting threatening communications) constitutes "a crime of

   violence" under the Bail Reform Act to which a statutory

22 rebuttable presumption of flight and danger arises.  18 U.S.C.

   §§ 3142(e), (f)(1)(A); *see, e.g., Henry v. Board of Immigration*

23 *and Customs Enforcement*, 493 F.3d 303, 309, n.7 (3d Cir. 2007)

24 (for purposes of the Bail Reform Act provisions, the term "crime

   of violence" means: (A) an offense that has an element of the

25 offense, the use, attempted use, or threatened use of physical

   force against the person or property of another; (B) any other

26 offense that is a felony and that, by its nature, involves a

27 substantial risk that physical force against the person or

   property of another may be used in the course of committing the

28 offense....).

1          (a) . . . "If a person is ordered released by
          a magistrate judge, . . .
2                    (1)  The attorney for the government may
          file, with the court having jurisdiction over
3          the offense, [the district court] a motion
          for revocation of the order or amendment of
4          the conditions of release; and

5                    . . .

6          the motion shall be determined promptly.

7    In addressing this specific question, the Ninth Circuit in *United*

8    *States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991), found that

9    §§ 3145(a) and (b) underscore the importance of the *district*

10   *judge* having original jurisdiction of the offense.   The Ninth

11   Circuit stated:

12          "We do not believe that this substantial
          responsibility, placed in the hands of an
13          *Article III Judge* can be diminished by the
          earlier action of a *magistrate*.   Investing
14          decision-making authority in *magistrates*
          under the federal *Magistrate's Act*, 28 U.S.C.
15          § 636, Congress was sensitive to Article III
          values.   It emphasized that 'the Magistrate
16          Act subsidiary to and only in aid of the
          district court,' and that 'the entire process
17          takes place under the *district court's* total
          control and jurisdiction."  *United States v.*
18          *Raddatz*, 447 U.S. 667, 681 (1980).

19   *Gebro* specifically held that the district court had jurisdiction

20   to reopen the bail issue on its own motion.   *Id.* at p. 1120.   The

21   district court obviously has the same authority on the motion of

22   the government to review a pretrial detention decision, as it is

23   specifically so provided by § 3145(a)(1).   Only the district

24   court in the district where the prosecution is pending has the

25   authority to review the magistrate judge's order.   *United States*

26   *v. Evans*, 62 F.3d 1233, 1239 (9th Cir. 1995).   There is no

27   question the district courts retain authority to review any

28   release decisions by magistrate judges.   *United States v. Tooz*,

4

236 F.R.D. 442, 445 (D. Ariz. 2006).

The district court may hold an evidentiary hearing, under the applicable *de novo* without deference review standard governing the Magistrate Judge's release order.  The Magistrate Judge's order is entitled to no deference, nor is the district court required to adopt any factual findings made by the Magistrate Judge.  *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990); *see also, U.S. v. McDavid*, 2006 WL 734877 (E.D. Cal 2006), Hollows, M.J. ("the district court's review of a magistrate[] [judge's] detention order is to be conducted *de novo* without deference to the magistrate[] [judge's] factual findings").  Such a hearing was held May 12, 2008.  At the nearly four hour hearing on May 12, 2008, the government presented the testimony of seven witnesses and moved into evidence Government Exhibits 1 through 25, consisting of a summary of exhibits and photographs of exhibits seized from the defendant's residence on May 6, pursuant to a federal search warrant for evidence relating to defendant's charged crimes of impersonating a federal agent and extortion, in violation of 18 U.S.C. §§ 872 and 912.

## FINDINGS OF FACT

The government's proof established by clear and convincing evidence that the defendant falsely represented himself as a DEA agent on numerous occasions in the last six months, to several victims, including two minors, Michelle P., age 16, and her brother, age 13.  Two other victims, Nicole M. and Nicole T., testified that the defendant carried a firearm, a starter pistol which looked identical to a firearm that these witnesses believed

5

was a firearm, which was seized from the defendant's bedroom pursuant to a duly issued search warrant.  *See, e.g.,* Government Exhibit 6 (photo of pistol).  The victims also testified that the defendant told them that he had a government issued vehicle, discussed his "case load," and defendant told them he possessed methamphetamine seized pursuant to his "cases," which he showed to the victims.  Two victims testified that the defendant offered to take them on a ride-along and gave them a purportedly official DEA ride-along form to complete.

Michelle P. testified the defendant attempted to take her thirteen year old brother on a ride-along.[2]  Victims who completed the ride-along form provided defendant, at his request, with their social security number, address, dates of birth, and other personal identifying information.  The defendant used this information to apply for and received unauthorized credit and debit cards, email accounts, cell phones, access to a bank account, and other things of value.

As set forth in Government Exhibit 1, numerous correspondences from credit card companies sent to the defendant's address in the names of victims, were seized from the defendant's bedroom, along with advertisements for firearms, starter pistols, assault weapons; badges; purported DEA case logs, consisting of reports, including a so-called sex crimes report containing graphic details, and a shirt with "Police," and

---

[2] **Michelle P. testified she did not want to enter the courtroom or testify in the courtroom and wanted nothing to do with defendant.  She stated she was not in fear of the defendant and did not view him as a threat.**

6

"Narcotics Task Force" identifiers printed in large letters on the front and back, having the appearance of law enforcement raid gear.

One of the victims, whose testimony was highly credible, testified that the defendant was able to access her bank account and steal money, approximately $700.00.  When confronted by that victim, the defendant concocted an elaborate story, claiming that another corrupt DEA employee had stolen the victim's money and promised that the DEA could reimburse the victim.

In addition, the defendant made numerous threatening communications, orally and electronically on cell phones in the form of text messages.  These communications were exhibited and read on victims' cell phones in open court.  While impersonating a DEA agent, the defendant sent the following text message to a friend of one of the testifying victims:

> I put it on my badge the shit ur in will all
> hit u at once with nothing u can do.

In another text message, the defendant wrote:

> If u see an all black crown victoria its 2
> late don't bother trying.

After receiving these text messages, this victim reported to the Selma Police Department that the victim was afraid for the victim's safety and the safety of others.  The victim and her mother expressed similar fears of the defendant at the hearing. The victim was specifically in fear of the defendant and was fearful he would know that she had contacted the Selma Police, because defendant possessed and used a police scanner.

The defendant also made threatening communications to another victim who also reported the matter to an officer of the

1  Selma Police Department.  The victim testified she loaned the

2  defendant money when the defendant was homeless after he had been

3  kicked out of his parents' house for using drugs.  When the

4  victim attempted to get repayment from the defendant, the

5  defendant did not repay the victim.  After the victim contacted

6  the defendant's father about the debt, the defendant's father

7  paid the victim for defendant's debt.  The defendant then made

8  another threatening communication to this victim:

9          "You better give the money back or I'll kill
           you."

10

11  Later, the defendant sent a text message to the victim stating:

12          "Petersen is mad, there might be someone
           waiting for you at the house."

13      Witnesses also testified that the defendant, an admitted

14  methamphetamine user, smoked something from a glass pipe, which

15  he described as "vitamins" and "medicine" for a medical

16  condition.  When one of the victims described the pipe to her

17  mother, that victim learned that the pipe was in fact used to

18  smoke crystal methamphetamine.

19      The government further proffered in its motion papers and

20  oral submissions that, upon advice and waiver of his *Miranda*

21  rights, at the time he was arrested, the defendant admitted that

22  he continues to be a methamphetamine user; admitted to the

23  impersonation and extortion scheme; and stated that he stole his

24  victims' identities in order to defraud credit companies and

25  other entities as a means of paying off his drug debts.  These

26  activities were continuing up to the time of his current

27  incarceration and while he was residing at his parents' home.

28      Having been afforded the opportunity, the defendant did not

**8**

1  present any evidence at the *de novo* hearing on May 12, 2008.  At

2  the hearing, defendant argued that the stay was unlawful and

3  further argued that the district court has no legal authority to

4  disturb the magistrate judge's order, nor could the district

5  court detain the defendant on the basis that he is a danger to

6  persons and the community.

7      Two victims and one victim's mother testified they are

8  fearful of the defendant and had real concern about his prior

9  threats.  Kingsburg and Selma are small communities surrounded by

10  agricultural lands.  Defendant's conduct was intended to and has

11  been intimidating toward these victims.

12      At the conclusion of the hearing, the Court made oral

13  findings as required by § 3142(f)(2)(B) and (g) and now makes the

14  written findings called for by § 3142(g)(i).  For the reasons set

15  forth in the evidentiary hearing record and the supplemental

16  findings of fact and conclusions of law made in writing above and

17  below, it has been established by more than clear and convincing

18  evidence, based on uncontested testimony of the victims; and the

19  opinions of three local police officers familiar with defendant

20  who have investigated his activities, that defendant is a present

21  danger to the public, persons in the community, and the

22  community, coupled with defendant's unobjected-to admissions of

23  the crimes described above, after he was first *Mirandized*.  There

24  are no conditions or combination of conditions that will assure

25  the safety of persons and the community.

26

27                          CONCLUSIONS OF LAW

28      The U.S. Magistrate Judge was authorized to stay her OR

                                  9

1  release order upon application of the government's attorney

2  pursuant to 18 U.S.C. § 3142(f)(2)(B), which provides that a

3  defendant may be detained pending completion of the detention

4  hearing.   Subsection 3145(a) mandates a prompt review of the

5  motion to revoke the Magistrate Judge's release order, thereby

6  providing a reasonable safeguard against unduly extended

7  detention during review.   The *de novo* release order review

8  hearing was conducted promptly, five days after, including the

9  intervening weekend, the date defendant was ordered released.[3]

10     Section 3142(f) incorporates the important Congressional aim

11 of assuring meaningful review of release orders, inasmuch as

12 subsection 3142(f) permits detention "pending completion of the

13 [detention] hearing," which reasonably includes a limited period

14 for prompt review of the magistrate's release order under

15 subsection 3145(a).   *Id.*

16     The Bail Reform Act mandates the release of a person pending

17 trial unless the Court "finds that no condition or combination of

18 conditions will reasonably assure the appearance of the person as

19 required and the safety of any other person in the community."

20 18 U.S.C. § 3142(e).   No rebuttable presumption applies in this

21 case as there is no maximum term of imprisonment of ten years or

22 more prescribed for the offenses.   "[T]he reference to safety of

23 any other person [in 3142] is intended to cover the situation in

24 which the safety of a particular identifiable individual . . . is

25

26     [3] In addition to the government's unavailability on Friday,
27 May 9, the Court was presiding over a jury trial in the matter of
   *United States v. Luke Scarmazzo, et al.*, 1:06-cr-342 OWW,
28 throughout the week of May 5.

10

1  of concern."  Here, two specific individuals, Nicole M. and

2  Nicole P. are identifiable individuals of concern.  *See United*

3  *States v. Hir*, 517 F.3d 1081, 1087, fn.3 (9th Cir. 2008).

4      The meaning of the term "community" is specifically

5  addressed in the *Hir* case at p. 1087, and extends beyond the

6  district in which the crimes have occurred.  Community means any

7  community such as the example given in *Hir*: "It would likewise be

8  absurd to hold that a court in Florida must ignore the danger

9  that an individual accused of defrauding susceptible persons in

10  that state may pose to residents of Oregon."  *Id.* at p. 1088.

11  The district judge may determine the threat a defendant poses to

12  any community, whether in the United States or abroad.  Here, the

13  relevant community is the Eastern District of California and

14  specifically, the cities of Selma and Kingsburg, where defendant

15  has threatened and intimidated local residents, used drugs, and

16  defrauded local residents and businesses in other states.

17  Defendant's actions have interstate effect in perpetrating

18  identity theft and credit card fraud, which have crossed state

19  lines.

20      It is well recognized that a pretrial detention order must

21  be careful to ensure that the "order is consistent with the

22  defendant's constitutional and statutory rights."  *United States*

23  *v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  "[T]he Fifth and

24  Eighth Amendments prohibitions of deprivations of liberty without

25  due process and of excessive bail require careful review of

26  pretrial detention orders to ensure that the statutory mandate

27  has been respected."  *United States v. Motanedi*, 767 F.2d 1043,

28  1045 (9th Cir. 1985).

As observed by Judge Reinhardt in the *Hir* case, "The current statute, the Bail Reform Act of 1984 was enacted, in large part, to address growing concern that dangerous individuals were committing crimes while released on bail." *Hir* at p. 1089.  In passing the 1984 Act, Congress criticized the earlier statute for "fail[ing] to grant the Courts . . . the authority to deny release to those defendants who pose an especially grave risk to the safety of the community." *Id.* at 1089.  "Congress explained that the 'broad base of support for giving judges the authority to weigh risks to community safety and pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release." *Hir*, *id.* at p. 1089, *quoting*, 1984 U.S.C.C.A.N. 3182, 3188; S.Rep. Nos. 98-225, at 5 (1983).

Under § 3142(e) the judicial officer shall issue a detention order pending trial if no condition or combination of conditions will reasonably assure (a) the appearance of the person as required and (b) the safety of any other person and the community.  The government bears the burden of showing a danger to the community by clear and convincing evidence. *United States v. Gebro*, *supra*, 948 F.2d at 1121; citing *Mottamedi*, 767 F.2d at 1406-07.

Section 3142(g) specifies the factors the court must consider to determine whether there are conditions of release that will reasonably assure the Defendant's appearance and the community's safety: (1) the nature and seriousness of the offense(s) charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental

1  condition, family and community ties, past conduct, history
2  relating to drug and alcohol abuse, and criminal history; and (4)
3  the nature and seriousness of the danger to any person in the
4  community that would be posed by the defendant's release.  *Gebro*,
5  948 F.2d at 1121.

6      As the Ninth Circuit specifically recognizes, conditions of
7  release depend largely on the Defendant's good faith - or lack of
8  it.  If conditions can too easily be circumvented or manipulated,
9  they are not effective.  *See, Hir* at p. 1093, *quoting, United*
10 *States v. Tortora*, 922 F.2d 880, 887, fn.11 (1st Cir. 1990).
11 Where conditions of release depend upon good faith compliance and
12 trust, where, as here, a defendant is an admitted drug user, a
13 thief, a liar, a false-impersonator, and has engaged in extortion
14 and threats pretending to be a DEA agent, there is an
15 unacceptably high risk that the defendant will not comply in good
16 faith nor can he be trusted to comply with proposed conditions,
17 or any other combination of release conditions imposed upon him.
18 *See Hir* at 1093.

19

20 **Application of the § 3142(g) Factors**

21     An evidentiary hearing has been held under 18 U.S.C.
22 § 3142(f)(2)(B).

23     **FIRST 3142(g) FACTOR**:  the nature and seriousness of the
24 offenses charged.  Here, the Defendant is charged with
25 impersonating an officer or employee of the United States; to
26 wit, a Drug Enforcement Administration agent and
27 extortion/attempted extortion by representing himself to be an
28 officer or employee of the United States.  These offenses entail

13

1 the Defendant's impersonation of a DEA agent; possession of a
2 starter pistol which has an almost identical appearance to a .9
3 mm semiautomatic firearm; threatening behavior toward individual
4 females ages 18 and 20 that the Defendant was attempting to
5 influence; threats to other persons that the Defendant would
6 "kill" a friend of one of the victims in this case; that he would
7 kill a young female victim if she did not repay his father;
8 victims' testimony under oath, that the Defendant has committed
9 identity theft, opened false credit cards; stolen at least
10 $700.00 from one of the testifying victims, age 20; impersonated
11 a Drug Enforcement Administration agent; and introduced minors,
12 ages 16 and 13, to a methamphetamine pipe and smoked the pipe in
13 front of the minors and sought to induce a 13 year old boy to go
14 on a "ride along" with him as part of the Defendant's false
15 personation of himself as a DEA agent.  Further evidence shows
16 that the Defendant is an habitual user of methamphetamine, has
17 unsuccessfully participated in a residential drug rehabilitation
18 program and out-patient after-care, and is not controllable by
19 his mother, who is the proposed custodian of the Defendant.

20       Defendant's threatening and extortionate behavior, false
21 personation of a DEA agent; direct lying; commission of white
22 collar fraud resulting in the theft of the credit cards, opening
23 and obtaining credit cards and cell phones under a false name;
24 stealing money from a victim to pay drug debts and unreliability
25 of the Defendant based on his lack of employment, all indicate an
26 unstable and threatening individual engaged in serious,
27 dangerous, and intimidating criminal conduct, who became angry in
28 the courtroom during the detention hearing, and of whom two of

1  the witnesses specifically testified they are afraid.

2       Based on the nature of these offenses and Defendant's

3  habitual lying and lack of trustworthiness, the seriousness of

4  the offenses factor weights strongly in favor of detention.

5       SECOND 3142(g) FACTOR:  the weight of the evidence against

6  the Defendant.  The Government presented significant testimony,

7  including that of the victim witnesses, persons who have been

8  directly threatened and intimidated by Defendant, verbally, and

9  by electronic text messages presented in open court.  Direct

10 evidence of continuing drug use; angry and unpredictable behavior

11 by Defendant;  extortion and theft to obtain money to pay drug

12 debts; admitted and uncontradicted evidence of the theft of the

13 credit card of one of the victims, accessing her bank account to

14 steal money; and fabrication of a categorically false explanation

15 to the victim that the victim's credit card had been stolen by a

16 DEA employee who worked for the Defendant.  Other fraudulently

17 obtained credit cards and the starter pistol, having the

18 appearance of a firearm, were all seized from the Defendant's

19 mother's residence where he resided.  Defendant has admitted

20 false personation, identity theft, credit card fraud, and his

21 current drug addiction.  The weight of the evidence on the second

22 factor is overwhelmingly against pretrial release.

23      THIRD 3142(g) FACTOR:  the Defendant's history, character,

24 mental condition, family and community ties, past conduct,

25 history related to drug abuse, and criminal history.  Although

26 the Defendant has no criminal history and has long-standing local

27 family and community ties, he has been an habitual

28 methamphetamine user since the age of 16 and his parents cannot

control him.  At great expense to his parents, he recently as
represented by the Pretrial Services Officer, "successfully
completed a residential drug treatment program and after-care
program," but has now reverted to the use of methamphetamine as
Defendant himself admits.  He is committing crimes to pay drug
debts.  Evidence of the unsuccessful treatment is provided by the
Defendant's mother and others who have told the Pretrial Services
Officer and testimony was presented in the court hearing that the
Defendant is again using methamphetamine.  He admits his recent
drug use.

As to his character, Defendant is an admitted and proven
liar, completely untrustworthy, and has engaged in bizarre,
threatening, intimidating, and extortionate behavior in which he
has sought to influence minors as young as age 13 and to expose
them to methamphetamine.

Defendant is not employed, was using drugs at the time of
his arrest, and has exhibited anger in threatening to kill the
male friend of one of the female witnesses.  He demonstrated
anger in the courtroom during the hearing, which his attorney
attempted to control.  The Third factors overwhelmingly favor
detention.

FOURTH 3142(g) FACTOR:  the nature and seriousness of the
danger to any person or to the community posed by the Defendant's
release.  Here, the Defendant presents a significant danger to
identified persons who he has threatened directly and has
communicated threats to others.  He has preyed on two minors,
Michelle P. and her 13 year old brother.  He has intimidated
victims by misrepresenting that he is a DEA agent and attempted

1  to take the 13 year old on a "ride along."  He has used a meth
2  pipe and what appeared to be drugs in the presence of the 13 year
3  old and Nicole M.  He has threatened two of the witnesses, Nicole
4  M. and Nicole T.  He threatened to kill Nicole T's friend within
5  the past 12 months.  Nicole T. is presently in active fear of the
6  Defendant.  Three Selma Police Officers testified that the
7  Defendant is dangerous and is a threat to persons and the
8  community.

9       The Fourth factor overwhelmingly favors detention.

10      THE COURT FINDS, because of the Defendant's unstable,
11 unpredictable and untrustworthy behavior, there is no set of
12 conditions that could be fashioned to protect persons or the
13 community because all such conditions require the compliance of
14 the Defendant, based on trust.  The Defendant has proved that he
15 is dishonest.  He is categorically untrustworthy.  The condition
16 that he reside with his mother is wholly unjustified.  Defendant
17 has been engaging in criminal behavior while residing at his
18 mother's residence.

19      All the statutorily required factors clearly and
20 convincingly weigh against release.  There are no conditions
21 which will reasonably assure the safety of persons and the
22 community.  As far as appearance at trial, given the increasingly
23 bizarre and dangerous behavior of the Defendant and his continued
24 use of methamphetamine, the Court has no confidence that he can
25 be trusted to comply with court orders or to make court
26 appearances.  This is exacerbated by his exhibition of anger in
27 open court during the detention hearing.

28      THE COURT FURTHER FINDS that all the clear and convincing

                                 17

1  evidence of dangerousness of the Defendant to persons and the

2  community is so great, that the conditions of 18 U.S.C.

3  §§ 3142(e) and (f)(2)(B) have been established by clear and

4  convincing evidence the Defendant has obstructed and will

5  obstruct justice by his lying, intimidating, and extortionate

6  conduct.  He has threatened, intimidated, and will attempt to

7  deter victim witnesses in this case.  For these reasons, pretrial

8  detention does not violate this defendant's Fifth Amendment right

9  to substantive due process.  *See, e.g., United States v. Salerno*,

10 481 U.S. 739 (1987); *United States v. Walker*, 808 F.2d 1309, 1311

11 (9th Cir. 1986); *see also, United States v. His*, 517 F.3d 1081,

12 1090-92 (9th Cir. 2008).

13      THE COURT FURTHER FINDS the government has shown by clear

14 and convincing evidence that because the defendant is a

15 methamphetamine addict he cannot be trusted.  His continuing

16 impersonation of a DEA agent and fraudulent conduct establish by

17 clear and convincing evidence that he is unlikely to abide by any

18 condition of release and that no condition or combination of

19 conditions can assure the safety of identified persons and the

20 community.

21

22                          CONCLUSION

23      For all the reasons stated in the above Findings of Fact and

24 Conclusions of Law, the government's motion to revoke defendant

25 Brett Petersen's pretrial release is GRANTED.  The defendant

26 shall remain detained in accordance with the provisions of 18

27 ///

28 ///

                              18

U.S.C. § 3142(i)(2) pending further order of the court or final
disposition of this case.

IT IS SO ORDERED.

Dated:    **May 22, 2008**                           **/s/ Oliver W. Wanger**
                                                    UNITED STATES DISTRICT JUDGE